**John C. DEVENYNS, Plaintiff–Appellant,**

v.

**Shirley M. HARTIG, Defendant–Appellee.**

No. 96CA2167.

Colorado Court of Appeals, Div. III.

Oct. 29, 1998.

As Modified on Denial of Rehearing Nov. 27, 1998.

Certiorari Denied Sept. 7, 1999.

Law Offices of W. Thomas Beltz, W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, for Plaintiff–Appellant.

Retherford, Mullen, Johnson & Bruce, LLC, Lori M. Moore, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this action arising from an automobile accident, plaintiff, John C. Devenyns, appeals from the judgment entered upon a jury verdict in favor of defendant, Shirley M. Hartig. We affirm.

The circumstances of the accident are not disputed. Plaintiff and defendant were driving in the same direction in the westbound lane on an icy road. Defendant, traveling in front of plaintiff, began to pump her brakes as she approached a traffic signal and lost control of her vehicle. The car spun on the ice and ended up facing east on the westbound lane. Plaintiff's car then collided head-on with defendant's vehicle.

## I.

Prior to trial, plaintiff requested the production of documents from defendant which included medical records in her personal injury protection (PIP) insurance file supplied by defendant to her insurance carrier as required under § 10–4–706, C.R.S.1998, and statements concerning her injuries made to the PIP insurance adjuster. Defendant objected, arguing primarily that the information contained in the documents was protected by the physician-patient privilege. The trial court, noting that defendant's medical condition was not at issue in the case, agreed with defendant, determined that she had produced all other information relevant to the accident as requested by plaintiff, and denied the motion.

Plaintiff contends that this was error. Specifically, he argues that defendant waived her privilege by reporting medical information to her insurance carrier and, therefore, he was entitled to inspect the documents. He further argues that these documents were relevant because they might have led to discoverable evidence admissible at trial concerning the extent of defendant's injuries and her ability to recall the accident. We perceive no error in the trial court's ruling.

■ A motion to compel discovery lies within the discretion of the trial court and its ruling will be upheld on appeal absent an abuse of its discretion. *Williams v. District Court*, 866 P.2d 908 (Colo.1993).

## A.

Section 13–90–107(1)(d), C.R.S.1998, provides that:

A physician ... shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

### 1.

■ Initially, to the extent that plaintiff suggests that only statements made by a patient to her doctor, but not her medical records, are protected under § 13–90–107(1)(d), we note simply that hospital and medical records fall within the scope of the physician-patient privilege. *See Clark v. District Court*, 668 P.2d 3 (Colo.1983); *Colorado State Board of Nursing v. Bethesda Psychiatric Hospital*, 809 P.2d 1051 (Colo. App.1990).

### 2.

■ Here, plaintiff specifically requested the production of defendant's medical records which had been released to her insurance carrier pursuant to § 10–4–706 for payment of her medical expenses. Plaintiff contends that, even if such records generally would be protected, because defendant submitted them to her PIP insurer, she impliedly waived the privilege. We do not agree. We conclude that, as a matter of law, the physician-patient privilege is not waived simply because an insured party has released medical records to his or her PIP insurance carrier for payment of medical expenses.

■ To establish an implied waiver, there must either be conduct inconsistent with the assertion of a privilege or a clear, unequivocal, and decisive act by a party manifesting an intent to relinquish the right or privilege. *Tripp v. Parga*, 847 P.2d 165 (Colo.App. 1992).

■ When a patient initiates a civil action, and by alleging a physical or mental condition as the basis for a claim for damages injects that issue into the case, the patient impliedly waives his or her privilege with respect to that medical condition. *Samms v. District Court*, 908 P.2d 520 (Colo.1995). Here, however, as the trial court observed, under no theory could it be argued that defendant's participation in this lawsuit constituted such an implied waiver.

Plaintiff does not seem to dispute this, but asserts that, nevertheless, defendant's disclosure of medical records to the PIP carrier constitutes disclosure to a third party and, therefore, must effectively be deemed as a waiver. We do not agree.

The mere act of submitting medical records to a PIP insurer cannot establish such waiver. A person injured in an automobile accident does not have a choice, but rather is required to submit medical records to an insurer in order to receive payment for medical expenses incurred from the accident. *See* § 10–4–706. Under such circumstances, his or her intent, at most, cannot be construed unequivocally as a relinquishment of the physician-patient privilege.

Viewed conversely, if the release of medical records to a PIP insurer, without more, could be considered a waiver of the physician-patient privilege, a person otherwise entitled to reimbursement from a PIP insurer would be forced to choose between waiving the privilege or forgoing such payment. Indeed, any patient, under these circumstances, could be discouraged from making full disclosure to a medical provider or even, perhaps, from seeking treatment.

Since individuals needing health care and medical treatment usually rely on insurance for full or partial payment of expenses, were the mere act of providing medical information to an insurance carrier sufficient to constitute a waiver, the privilege would be rendered meaningless. *See Samms v. District Court, supra* (purpose of physician-patient privilege is to promote health care); *State ex rel. Gonzenbach v. Eberwein,* 655 S.W.2d 794 (Mo.Ct.App.1983) (releasing records to insurer for reimbursement does not waive physician-patient privilege because such action is integral part of modern medical treatment process); *Henry v. Lewis,* 102 A.D.2d 430, 478 N.Y.S.2d 263 (N.Y.App.Div.1984) (authorization of patient to release medical information to specific party is not a blanket waiver of physician-patient privilege in relation to others).

### B.

■ We also disagree with plaintiff's contention that the trial court abused its discretion when it determined that, under the circumstances at issue, statements by defendant concerning her injuries made to the insurance adjuster were not discoverable.

■ A party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter of the action. Information sought need not be admissible at trial if such information appears reasonably calculated to lead to discovery of admissible evidence. C.R.C.P. 26(b)(1); *Kerwin v. District Court,* 649 P.2d 1086 (Colo.1982).

Here, even if we assume that certain statements made by defendant to her insurance adjuster were not protected by the physician-patient privilege, the trial court correctly determined that they were not properly discoverable under the particular circumstances here.

First, contrary to plaintiff's assertion, evidence of defendant's injuries had no relation to the existence or extent of plaintiff's injuries.

Secondly, although plaintiff alleged that defendant's injuries may have affected her ability to remember how the accident occurred, he offered no basis whatsoever for his speculation that defendant's ability to recall events was affected by the accident. And, as plaintiff concedes, the trial court conducted an *in camera* inspection of the discovery requests before rejecting his motion.

Furthermore, defendant's statements concerning how the accident occurred already had been provided to plaintiff. If inconsistent statements were made by defendant, plaintiff had the ability to impeach her recollection through these existing statements. Evidence of her injuries would not lead to these statements and plaintiff did not require such information in order to impeach defendant's credibility.

### II.

■ Plaintiff next contends that the trial court erred in refusing to allow him to read defendant's deposition into the record as substantive evidence in lieu of her live testimony during trial. He argues that, because

C.R.C.P. 32(a)(2) allows the use of an adverse party's deposition for any purpose, he should have been allowed to read parts of defendant's deposition into the record, even though she was available to testify. We agree, but conclude that the error was harmless.

During the presentation of his case, rather than call her as a witness, plaintiff sought to introduce into evidence portions of defendant's deposition under C.R.C.P. 32(a)(2). He informed the court that his purpose for doing this was "trial strategy." He explained that he did not want to elicit sympathy for defendant and wanted to avoid the appearance of "picking on" her during direct examination.

Defendant objected, asserting that C.R.C.P. 32(a)(3) requires a showing of unavailability. Defendant argued that, because she was a party and a witness present in court available to testify, C.R.C.P. 32(a)(3) allowed plaintiff to use her deposition only for impeachment.

Citing the reference to the importance of presenting testimony orally in open court set forth in C.R.C.P. 32(a)(3), the trial court agreed with defendant, denied plaintiff's request, and determined that plaintiff could use defendant's deposition only to impeach her testimony. Plaintiff chose not to use defendant's deposition and now argues that the trial court's ruling is reversible error. We do not agree.

▪ C.R.C.P. 32(a)(2) provides, in pertinent part, that "the deposition of a party ... may be used by an adverse party for any purpose." Thus, under this rule, if no other rules of evidence are violated and if, prior to its admission, a showing of some legitimate purpose is made, a party may introduce a portion of the opposing party's deposition as evidence rather than call that party as a witness. *See Scruggs v. Otteman,* 640 P.2d 259 (Colo.App.1981); *Stauffer v. Karabin,* 30 Colo.App. 357, 492 P.2d 862 (1971).

State and federal jurisdictions interpreting nearly identical versions of this rule consistently have held that a party may introduce, as part of its substantive proof, the deposition of an adversary, regardless whether the adversary is available to testify at trial. *See Aetna Casualty & Surety Co. v. Guynes,* 713 F.2d 1187 (5th Cir.1983); *Pingatore v. Montgomery Ward & Co.,* 419 F.2d 1138 (6th Cir.1969); *Mayhood v. LaRosa,* 58 Cal.2d 498, 24 Cal.Rptr. 837, 374 P.2d 805 (1962); *McMillan v. King,* 557 So.2d 519 (Miss.1990); *Horne v. Milgrim,* 226 Va. 133, 306 S.E.2d 893 (1983). *But see Rainbow Oil Co. v. Christmann,* 656 P.2d 538 (Wyo.1982) (rule contemplates reading of deposition into evidence only if witness is not available).

This is consistent with rules of evidence which do not characterize admissions or statements of a party-opponent as hearsay and which allow as substantive evidence statements of a party inconsistent with such party's claim. *See* CRE 801(d)(2); *South Carolina Insurance Co. v. Fisher,* 698 P.2d 1369 (Colo.App.1984); R. Bailin, et al., *Colorado Evidentiary Foundations* 304 (1997). *See also* C. Wright & A. Miller, *Federal Practice & Procedure* § 2145 (1982); *Moore's Federal Practice* § 32.02 (3d ed.1998).

As defendant points out, C.R.C.P. 32(a)(3) also addresses the use of a witness' deposition at trial. Unlike C.R.C.P. 32(a)(2), however, under C.R.C.P. 32(a)(3), "the deposition of a witness, whether or not a party, may be used by any party for any purpose" if the court finds that the witness is unavailable under particular circumstances. Defendant argues that, in order to harmonize what she perceives as an apparent conflict between the two provisions, C.R.C.P. 32(a)(2) must be interpreted as a general proposition which is limited by the specific requirements of unavailability set forth in C.R.C.P. 32(a)(3).

However, we perceive no conflict between the two rules. By its terms, C.R.C.P. 32(a)(2) applies exclusively to the deposition of an *adverse* party offered into evidence by the *opposing* party. In contrast, C.R.C.P. 32(a)(3) applies to the deposition of *any* witness, and allows its use, under appropriate circumstances, by *any* party.

▪ Again, this is consistent with evidentiary rules, the purpose of which is to produce a reliable judgment based on trustworthy information. *See generally* Strahorn, *A*

*Reconsideration of the Hearsay Rule & Admissions*, 85 U. Pa. L.Rev. 484 (1947). The requirement of unavailability, present in C.R.C.P. 32(a)(3), but not 32(a)(2), addresses hearsay concerns attendant to the trustworthiness of a witness' out-of-court statements and protects the opposing party from surprise. Only if a witness is unavailable such that his or her testimony would be excluded altogether can the deposition become an exception to the hearsay rule. *See* CRE 804; *Hansen v. Abrasive Engineering & Manufacturing, Inc.*, 317 Or. 378, 856 P.2d 625 (1993) (use of witness' deposition constitutes exception to hearsay rule if witness is unavailable).

■ On the other hand, admissions or statements of a party-opponent are not classified as hearsay because the need to admit such statements as a part of the adversary system outweighs the concerns for trustworthiness underlying the exceptions to the hearsay rule. *See* CRE 801(d)(2); *Moore's Federal Rules Pamphlet* § 801.6 (1998); Strahorn, *supra* (admissions not hearsay because they are relevant to a party's conduct in an action). *Cf.* CRE 801(d)(1) (prior inconsistent statements of witnesses are not hearsay if witness testifies at trial subject to cross-examination). Thus, even though C.R.C.P. 32(a)(3), like C.R.C.P. 32(a)(2), because of its broader scope, can apply to the deposition of a party, it is important that witness need not be adverse to the party seeking to use the deposition. *See Head v. H.J. Russell Construction Co.*, 152 Ga.App. 864, 264 S.E.2d 313 (1980) (distinction between the two rules is consistent with the rules of evidence).

Consequently, defendant's assertion to the contrary notwithstanding, we cannot read the more inclusive language of C.R.C.P. 32(a)(3)—the deposition of a "witness, whether or not a party, may be used by any party"—to govern the use of an adverse party's deposition. To apply C.R.C.P. 32(a)(3) so as to require adverse parties to comply with its requirements would render C.R.C.P. 32(a)(2) superfluous and the specific term "adverse party" meaningless. *Accord Gateway Co. v. DiNoia*, 232 Conn. 223, 654 A.2d

342 (1995); *Blankenship v. Myers*, 97 Idaho 356, 544 P.2d 314 (1975).

Thus, because C.R.C.P. 32(a)(2) allows a party to use an adverse party's deposition for any purpose without a showing of unavailability, we agree with plaintiff that the trial court incorrectly determined that he could not use defendant's deposition as substantive evidence on grounds that she was available to testify.

■ However, a trial court's ruling excluding evidence is reversible error only if a substantial right of the party is affected, that is, if the error substantially influences the outcome of the case. *Flanders Electric Motor Service, Inc. v. Davall Controls & Engineering*, 831 P.2d 492 (Colo.App.1992). We agree with defendant that the error here is not reversible.

Specifically, plaintiff was not precluded from questioning defendant—either by calling her as a witness in his case in chief or through cross-examination—on her recollection of the accident and then using her deposition to impeach her testimony. ·The fact that he chose not to do so, even though the trial court expressly stated that it would permit the deposition to be used for such purpose, is not grounds for reversal simply because plaintiff argues that he should have been allowed to use his own method to introduce inconsistencies in defendant's testimony.

To the contrary, because an alternate method was available for introducing the evidence plaintiff sought to put before the jury, there was no undue prejudice resulting from the trial court's ruling. *See* CRE 801(d)(1) (prior inconsistent statements not hearsay if witness testifies at trial); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290 (5th Cir.1978) (no prejudice if party is not deprived of ability to present material evidence); *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147 (10th Cir.1981) (exclusion of deposition not reversible error if an equally effective method of presenting the same evidence was available); *Burlington Northern R.R. Co. v. Hood*, 802 P.2d 458 (Colo.1990) (if prior inconsistent statements not hearsay, then they are admissible as substantive evidence).

## III.

 Driving on the wrong side of the road may be presumed to be negligence. *See CJI-Civ.3d* 11:10 (1988) (Notes on Use) (presumption is raised when a driver is driving on the wrong side of the road and a collision occurs). An instruction on this presumption may be given if there is sufficient evidence from which a reasonable jury could reasonably find by a preponderance of the evidence that the basic facts giving rise to the presumption are true. *See CJI-Civ.3d* 11:10 (1988).

Here, plaintiff requested the trial court to instruct the jurors that:

Presumptions are rules based upon experience or public policy and established in the law to assist the jury in ascertaining the truth.

When vehicles collide, the law presumes, *and you must find,* that a driver who was on the wrong side of the road a the time of the collision was negligent. (emphasis added)

*CJI-Civ.3d* 3:5 & 11:10 (1988).

Plaintiff argued to the trial court, and argues similarly here that, because it was undisputed that defendant was facing the opposite direction on the road after her car had spun on the ice, she was driving her car on the wrong side of the road. Therefore, he was entitled to have the court instruct the jury on this presumption of negligence. We disagree.

 A trial court has a duty to instruct the jury correctly on the law applicable to the case. *Jordan v. Bogner,* 844 P.2d 664 (Colo.1993). A party is entitled to a jury instruction if it is supported by the evidence and consistent with the existing law. *Melton v. Larrabee,* 832 P.2d 1069 (Colo.App.1992).

In denying the instruction, the trial court correctly reasoned that, since defendant ended up facing in the wrong direction because she spun out on the ice, it is a "misnomer to say that she was proceeding on the wrong side of the highway. [She] simply was not driving on the wrong side of the road."

Moreover, plaintiff tendered the wrong instruction.

According to *CJI-Civ.3d* 3:5 (1988), as relevant here, there are two versions of this instruction. The first—the version tendered by plaintiff—requires the jury to accept the presumption if there is no, or insufficient, evidence presented to rebut the presumption raised by the undisputed facts. However, if sufficient rebutting evidence is presented and the presumption still may remain in the case even with the existence of the rebutting evidence, then the second, alternate version of the instruction is to be given which allows, but does not require, the jury to accept the presumption. *See CJI-Civ.3d* 3:5 (1988) (Notes on Use).

Here, although it was undisputed that defendant's car was facing in the wrong direction, defendant presented evidence of the weather and the icy condition of the road to rebut the presumption of negligence raised by her location on the highway.

Furthermore, even if otherwise warranted under the facts here, we need not decide whether it might have been appropriate for the court to have given the second version of the instruction. Such instruction was not requested, and the court was under no obligation to fashion it. *See Hansen v. State Farm Mutual Automobile Insurance Co.,* 957 P.2d 1380 (Colo.1998) (failure to request and tender correct jury instruction cannot serve as basis for reversal).

## IV.

 Finally, we disagree with plaintiff that the trial court's refusal to direct a verdict on the issue of defendant's partial liability as a matter of law was error.

 A motion for a directed verdict should be granted only in the clearest of cases when the evidence is undisputed and it is plain that no reasonable juror could decide the issue against the moving party. *Evans v. Webster,* 832 P.2d 951 (Colo.App.1991).

 Except in the clearest of cases where the facts are undisputed and reasonable minds can draw but one conclusion, relative degrees of fault are to be determined by a trier of fact. *Gordon v. Benson,* 925 P.2d 775 (Colo.1996).

Plaintiff concedes that evidence was presented showing that he might have been comparatively negligent. There was also evidence presented by defendant that she had acted appropriately in the face of a sudden emergency and, therefore, was not negligent. Because of this conflicting evidence concerning the possibility of fault attributable to both parties, the trial court properly denied plaintiff's motion for a directed verdict. *See Merchants Motor Freight v. Downing,* 227 F.2d 247 (8th Cir.1955) (court properly refused to direct verdict when evidence on issue of contributory negligence is in conflict); *Gordon v. Benson, supra.*

The judgment is affirmed.

Judge JONES and Judge RULAND concur.